UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS, CDCR #AG-2394,<br><br>Plaintiff,<br><br>v.<br><br>O. NAVARRO; E. ESTRADA; J. MEJIA; and A. SILVA,<br><br>Defendants. | Case No.: 18cv1581-TWR(KSC)<br><br>**ORDER RE PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>**[Doc. No. 108.]** |

Before the Court is plaintiff's Motion for Leave to File a Second Amended Complaint. [Doc. No. 108.] In this Motion, plaintiff seeks to file a Second Amended Complaint to add a fourth cause of action against a new defendant, T. Brisco. The proposed cause of action against T. Brisco is for alleged deliberate indifference to serious medical needs. [Doc. No. 108, at pp. 11-13.] In response to this Motion, defendants filed a Statement of Non-Opposition. [Doc. No. 112.]

For the reasons outlined more fully below, the Court finds that plaintiff's unopposed Motion for Leave to File a Second Amended Complaint must be GRANTED. [Doc. No. 108.]

/ / /

/ / /

## *Background*

Pursuant to the Court's Order of March 17, 2021, plaintiff filed his First Amended Complaint to replace Doe defendants with names of actual defendants learned during the discovery process. [Doc. Nos. 94, 95.] Count One of the First Amended Complaint ("Complaint") alleges defendant Navarro refused to let plaintiff out of his cell to obtain his "medical and mental health psych medications, [] his P.R.N. medications," and his migraine medication on February 22, 2018 during the "3 p.m. med line call." [Doc. No. 95 at p. 4.] At this time, plaintiff claims he really needed his migraine medication, because he had a migraine. According to the Complaint, plaintiff had multiple inmates advise defendant Navarro he was requesting to be let out of his cell to obtain his medications, but defendant Navarro refused, stating plaintiff "wasn't on the list." [Doc. No. 95, at p. 4.] However, plaintiff claims he was on the list for "P.R.N." and mandatory medications at 3:00 p.m. [Doc. No. 95, at p. 4.]

Plaintiff also claims he kicked the door, yelled, screamed "man down," and asked to be let out of his cell, but he was ignored by defendant Navarro and the "floor staff." [Doc. No. 95, at p. 4.] Floor staff are identified in the Complaint as defendants R. Rodriguez and Castro. [Doc. No. 95, at p. 4.] The Complaint alleges defendants R. Rodriguez and Castro did not intervene in the situation even when plaintiff showed them his nose was bleeding. Instead, they allegedly went into the office, closed the door, and began laughing. Defendant Navarro then allegedly made comments over the speaker telling plaintiff to stop acting like a baby or he would be written up for disciplinary action. [Doc. No. 95, at p. 4.] Plaintiff allegedly became exhausted, "passed out from his migraine pain," and missed his dinner. [Doc. No. 95, at p. 4.]

Again at 8:00 p.m. on the same date, plaintiff was allegedly not let out of his cell by defendant Navarro for the "8:00 p.m. med line" even though he was advised by plaintiff, multiple inmates, and defendants R. Rodriguez and Castro, that plaintiff needed his "mandatory psych medication" and some "P.R.N.s." [Doc. No. 95, at p. 5.] Defendant Navarro repeatedly yelled that plaintiff was not getting out because he was not

on the list. Again, R. Rodriguez and Castro did not intervene to assist plaintiff even though they were notified that plaintiff needed his "mandatory psych medication" and some "P.R.N.s." [Doc. No. 95, at p. 5.]

Counts Two and Three of the Complaint include allegations about two similar incidents on February 25, 2018 and March 19, 2018. In Count Two, the Complaint alleges once again that on February 25, 2018, defendant Navarro refused to let plaintiff out of his cell so that he could obtain his "psych medication," pain medication, and migraine medication. [Doc. No. 95, at p. 6.] This time, however, it was defendants J. Mejia and M. Rodriguez who allegedly ignored plaintiff's "man down" calls and failed to assist plaintiff in obtaining access to his medications. [Doc. No. 95, at p. 6.] Plaintiff claims he "passed out from migraine pain and exhaustion" and then missed dinner and the "8 p.m. med line call." [Doc. No. 95, at p. 6.] Around 9:00 p.m., plaintiff says he woke up when defendant Mejia was doing his rounds, and he told defendant Mejia he needed his "mandatory psych meds and his migraine medication." [Doc. No. 95, at p. 6.] Defendant Mejia allegedly told plaintiff it was too late and to "go to sleep it will go away." [Doc. No. 95, at p. 6.] In addition, defendant M. Rodriguez called plaintiff a "cry baby" and told him to go to sleep. [Doc. No. 95, at p. 6.]

In Count Three, the Complaint alleges that on March 19, 2018, defendant Navarro again refused to open plaintiff's cell door so that he could obtain "mandatory scheduled medication." [Doc. No. 95, at p. 7.] From 8:00 p.m. to 10:00 p.m., plaintiff claims he kicked and beat on the door, yelled in frustration, and called "man down" to attempt to get help. [Doc. No. 95, at p. 7.] Defendants Mejia and Estrada then allegedly ignored plaintiff's calls of "man down" and failed to assist or intervene so that plaintiff could access his medications. [Doc. No. 95, at p. 7.] Plaintiff also claims he covered his window which should have "triggered an emergency response," but plaintiff was still ignored. [Doc. No. 95, at p. 7.] All the yelling and noisemaking allegedly elevated plaintiff's blood pressure, gave him a migraine headache, and "serious painful chest pains." [Doc. No. 95, at p. 7.] He yelled that he was possibly having a stroke or heart

attack but was still ignored. Plaintiff even put a "man down" note in front of his cell door, and when defendant A. Silva completed routine nightly security checks, he read the note and slid it back under the door without saying anything or checking plaintiff's welfare, which violated prison protocols. [Doc. No. 95, at p. 7.] Because he did not have access to his medications, plaintiff claims he suffered all night from migraines, nose bleeds, chest pains, low back pain, shoulder pain, and a "multitude of psychiatric ailments," including anxiety, depression, anger, insomnia, and suicidal thoughts. [Doc. No. 95, p. 7.]

## *Discussion*

### I. *Motion to Amend Standards.* [1]

Federal Rule of Civil Rule 15(a)(2) states that: "The court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). "Although leave to amend 'shall be freely given when justice so requires,' Fed.R.Civ.P. 15(a), it 'is not to be granted automatically.'" *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002), quoting *Jackson v. Bank of Hawaii*, 902 21 F.2d 1385, 1387 (9th Cir.1990).

In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court set forth factors to consider in determining whether leave to amend should be granted. *Id.* at 182. These factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* Here, there are no factors indicating leave to amend should not be

---

[1] "Generally, a motion for leave to amend the pleadings is a nondispositive matter that may be ruled on by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)." *Morgal v. Maricopa Cty. Bd. of Sup'rs*, 284 F.R.D. 452, 458 (D. Ariz. 2012). A ruling on a motion for leave to amend would be considered dispositive if a party is denied the opportunity to assert a new claim or defense (*e.g.*, when the ruling is with prejudice and there is no further opportunity to file another motion to amend). *Id.*

granted, and the current defendants do not oppose the proposed amendments to the operative pleading.

## II. *Proposed Addition of New Claim and New Defendant (Count 4).*

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference" can be established by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d at 1096. Standing alone, a prisoner's allegation that records were falsified is not enough to state a cognizable claim of deliberate indifference to a prisoner plaintiff's serious medical needs. *See, e.g., Green v. Branson*, 108 F.3d 1296, 1304 (10th Cir. 1997).

Plaintiff's proposed Count Four is a new claim for "deliberate indifference" to serious medical needs in violation of the Eighth Amendment against a new defendant, T. Brisco, a "psych tech in charge of dispensing plaintiff's medication."[2] [Doc. No. 108,

---

[2] Previously, the Court denied plaintiff's request to add this cause of action against T. Brisco "without prejudice." [Doc. No. 94, at p. 10.] Plaintiff was granted 30 days leave to amend the defects outlined in the Court's March 17, 2021 Order and to file a new motion for leave to amend. [Doc. No. 94, at p. 10.] In an Order filed on April 23, 2021, plaintiff was granted an extension of time to file his new motion for leave to amend. [Doc. No. 102.] The instant Motion for Leave to File a second Amended Complaint was

5

at pp. 11-13.] In proposed Count Four, plaintiff alleges the discovery process in this case revealed that T. Brisco falsified medical records by indicating plaintiff was a "no show with no barriers" when his medications were dispensed on February 22, 2018, February 25, 2018, and March 19, 2018. [Doc. No. 108, at p. 11.] According to plaintiff, this statement is false, because there was a barrier in that he was not let out of his cell on these dates so that he could obtain his medications, and T. Brisco did not follow established protocols when plaintiff did not show up to obtain his medications. [Doc. No. 108, at p. 11.]

Plaintiff further alleges T. Brisco acted with deliberate indifference, because she has medical training and knew the risks to plaintiff's health and safety if he was unable to obtain his medications. In addition, plaintiff believes T. Brisco could hear plaintiff yelling and kicking to be let out of his cell for his medications. [Doc. No. 108, at p. 12.] Despite knowledge of the risks, plaintiff alleges T. Brisco failed to contact plaintiff face-to-face or have him released from his cell so she could dispense his medications to him. [Doc. No. 108, at pp. 11-12.] She also allegedly failed to contact appropriate supervisory staff about the "actual real barriers" that prevented plaintiff from getting his medications which allegedly "placed plaintiff in ongoing imminent danger of serious physical injury." [Doc. No. 108, at pp. 12-13.]

When liberally construed and taken as true, the proposed cause of action and the allegations against T. Brisco include enough facts to state a plausible Eighth Amendment claim for deliberate indifference to serious medical needs under Section 1983. As noted above, the other defendants in the case do not oppose plaintiff's Motion seeking to add this new cause of action against T. Brisco. Accordingly, the Court finds that plaintiff's Motion for Leave to File a Second Amended Complaint must be GRANTED.

/ / /

---

then accepted for filing even though it arrived a few days after the new deadline. [Doc. No. 108.]

## *Conclusion*

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Leave to File a Second Amended Complaint is GRANTED. The Clerk of the Court is directed to file the proposed Second Amended Complaint, which was submitted by plaintiff at Doc. No. 108, at pages 2-30.

2. The Clerk of the Court is further directed to issue a summons as to plaintiff's Second Amended Complaint and to forward it to plaintiff along with blank U.S. Marshal Form 285s for each the four new defendants.[3] In addition, the Clerk will provide plaintiff with certified copies of this Order, his Second Amended Complaint, and the summons so that he may serve the new defendants. Upon receipt of this "IFP Package," plaintiff must complete the USM Form 285s as completely and accurately as possible, *include an address where each named Defendant may be found and/or subject to service* pursuant to S.D. Cal. CivLR 4.1c., and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

3. The U.S. Marshal is directed to serve a copy of the Second Amended Complaint and summons upon the new defendants as directed by plaintiff on USM Form 285s provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

///
///
///
///
///

---

[3] New defendants R. Rodriguez, Castro, and M. Rodriguez were added when the First Amended Complaint was filed on March 17, 2021 [Doc. No. 95] pursuant to the Court's Order of March 17, 2021 [Doc. No. 94, at p. 10]. As outlined above, the Court is now granting plaintiff's request to file the Second Amended Complaint to add another new defendant, T. Brisco.

4.      Once served, the new defendants must respond to plaintiff's Second Amended Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a).

        IT IS SO ORDERED.

Dated: June 25, 2021

Hon. Karen S. Crawford
United States Magistrate Judge