1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| LANCE WILLIAMS,<br>CDCR #AG-2394,<br><br>                              Plaintiff,<br><br>v.<br><br>O. NAVARRO; E. ESTRADA; J. MEJIA;<br>and A. SILVA,<br><br>                              Defendants. | Case No.:  18cv1581-TWR(KSC)<br><br>**REPORT AND RECOMMENDA-<br>TION RE DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT**<br><br>**[Doc. No. 114.]** |

Plaintiff is proceeding *pro se* and *in forma pauperis* (IFP) in this civil rights action pursuant to Title 42, United State Code, Section 1983, alleging defendants violated his rights under the Eighth Amendment to the United States Constitution because they were deliberately indifferent to his serious medical needs.  [Doc. Nos. 19, 116.]

Before the Court is a Motion for Summary Judgment filed by defendants J. Mejia; O. Navarro; E. Estrada; and A. Silva seeking judgment in their favor on the first, second, and third causes of action in the Second Amended Complaint.  [Doc. No. 116.] Defendants' Motion for Summary Judgment also pertains to defendants R. Rodriguez, Castro, and M. Rodriguez, who are also named in the first, second, and third causes of action in the Second Amended Complaint, but these defendants were only recently named and served in the action.  [Doc. No. 114, at p. 6 n.1; Doc. Nos. 133, 134, 135.]

1

Plaintiff has filed an Opposition to defendants' Motion [Doc. No. 130], and defendants also filed a Reply [Doc. No. 131].

In their Motion, defendants argue that summary judgment should be granted in their favor, because there is no evidence to establish that plaintiff had a serious medical need on the dates in question in the Second Amended Complaint or that defendants were deliberately indifferent to a serious medical need. Alternatively, defendants argue they are entitled to qualified immunity, because their alleged actions did not violate clearly established case law. For the reasons outlined more fully below, the Court RECOMMENDS that the District Court GRANT defendants' Motion for Summary Judgment as to the first, second, and third causes of action in plaintiff's Second Amended Complaint against defendants J. Mejia; O. Navarro; E. Estrada; A. Silva; R. Rodriguez; Castro; and M. Rodriguez.

### ***Background***

On June 25, 2021, plaintiff's Motion to Amend was granted, and plaintiff's Second Amended Complaint was filed to add Count Four, alleging that a new defendant, T. Brisco, falsified medical records by indicating plaintiff was a "no show with no barriers" when his medications were dispensed on February 22, 2018, February 25, 2018, and March 19, 2018. [Doc. Nos. 115-116.] Defendant T. Brisco was only recently served with the Second Amended Complaint [Doc. No. 136], and defendants' Motion for Summary Judgment does not address this new fourth cause of action.

Count One of the Second Amended Complaint ("Complaint") alleges defendant Navarro was the third watch control booth operator on February 22, 2018, and he refused to let plaintiff out of his cell to obtain his "medical and mental health psych medications, [] his P.R.N. medications,"[1] and his migraine medication during the "3 p.m. med line

---

[1]    Based on common usage, the Court's understanding is that "P.R.N." refers to medications that are not "mandatory" but are instead taken on an "as needed" basis, such as Tylenol for a headache.

call." [Doc. No. 116 at p. 4.]  At this time, plaintiff claims he really needed his migraine medication, because he had a migraine, so he had multiple inmates alert defendant Navarro he was requesting to be let out of his cell to obtain his medications, but defendant Navarro refused, stating plaintiff "wasn't on the list." [Doc. No. 116, at p. 4.] However, plaintiff claims he was on the list for "P.R.N." and mandatory medications at 3:00 p.m. [Doc. No. 116, at p. 4.]

Because defendant Navarro ignored him and made "negative comments," plaintiff claims he kicked the door, yelled, and screamed "man down." [Doc. No. 116, at p. 4.]  In addition, plaintiff claims he and other inmates alerted "floor staff" that plaintiff needed to be let out of his cell, but they did not intervene to assist in the situation.  [Doc. No. 116, at p. 4.]  "Floor staff" are identified in the Complaint as defendants R. Rodriguez and Castro.  [Doc. No. 116, at p. 4.]  The Complaint further alleges defendants R. Rodriguez and Castro did not intervene in the situation even when plaintiff showed them his nose was bleeding.  Instead, they allegedly went into the office, closed the door, and began laughing.  Defendant Navarro then allegedly made comments over the speaker telling plaintiff to stop acting like a baby or he would be written up for disciplinary action. [Doc. No. 116, at p. 4.]  Plaintiff allegedly became exhausted, "passed out from his migraine pain," and missed his dinner.  [Doc. No. 116, at p. 4.]

Again at 8:00 p.m. on the same date, plaintiff was allegedly not let out of his cell by defendant Navarro for the "8:00 p.m. med line." [Doc. No. 116, at p. 5.]  Even though they were notified by plaintiff and multiple inmates that plaintiff needed to be let out of his cell to obtain his medications, defendants R. Rodriguez and Castro did not intervene and told plaintiff they could not make defendant Navarro do anything.  [Doc. No. 116, at p. 5.]  Defendant Navarro repeatedly yelled that plaintiff was not getting out because he was not on the list.  [Doc. No. 116, at p. 5.]

Counts Two and Three of the Complaint include allegations about two similar incidents on February 25, 2018 and March 19, 2018.  In Count Two, the Complaint alleges once again that on February 25, 2018, defendant Navarro refused to let plaintiff

out of his cell so that he could obtain his "psych medication," pain medication, and migraine medication at the 3:00 p.m. "med-line call." [Doc. No. 116, at p. 6.] The Complaint states that plaintiff needed his medication at this time for a "severe migraine" that was causing him nose bleeding, lightheadedness, blurred vision, and nausea. [Doc. No. 116, at p. 6.] This time, however, it was defendants J. Mejia and M. Rodriguez who allegedly ignored plaintiff's "man down calls" and failed to intervene, follow protocols, or assist plaintiff in obtaining access to his medications. [Doc. No. 116, at p. 6.] Plaintiff claims he "passed out from migraine pain and exhaustion" and then missed dinner and the "8 p.m. med line call." [Doc. No. 116, at p. 6.] Around 9:00 p.m., plaintiff says he woke up when defendant Mejia was doing his rounds, and he told defendant Mejia he needed his "mandatory psych meds and his migraine medication." [Doc. No. 116, at p. 6.] Defendant Mejia allegedly told plaintiff it was too late because "program" was closed down and to "go to sleep it will go away." [Doc. No. 116, at p. 6.] In addition, defendant M. Rodriguez called plaintiff a "cry baby" and told him to go to sleep. [Doc. No. 116, at p. 6.]

In Count Three, the Complaint alleges that on March 19, 2018, defendant Navarro again refused to open plaintiff's cell door at 8:00 p.m. so that he could obtain "mandatory scheduled medication." [Doc. No. 116, at p. 7.] From 8:00 p.m. to 10:00 p.m., plaintiff claims he kicked and beat on the door, yelled in frustration, and called "man down" to attempt to get help. [Doc. No. 116, at p. 7.] Defendants Navarro, J. Mejia and E. Estrada then allegedly ignored plaintiff's calls of "man down" and failed to assist or intervene so that plaintiff could access his medications. [Doc. No. 116, at p. 7.] Plaintiff also claims he covered his window around 8:15 p.m., which should have "triggered an emergency response," but plaintiff was still ignored. [Doc. No. 116, at p. 7.] All the yelling and noisemaking allegedly elevated plaintiff's blood pressure, gave him a migraine headache, and "serious painful chest pains." [Doc. No. 95, at p. 7.] He yelled that he was possibly having a stroke or heart attack but was still ignored. Plaintiff even put a "man down" note in front of his cell door, and when defendant A. Silva completed routine nightly

4

security checks, he read the note and slid it back under the door without saying anything or checking plaintiff's welfare, which violated prison protocols.  [Doc. No. 116, at p. 7-8.]  Because he did not have access to his medications, plaintiff claims he suffered all night from migraines, nosebleed, chest pains, low back pain, shoulder pain, and a "multitude of psychiatric ailments," including anxiety, depression, anger, insomnia, and suicidal thoughts.  [Doc. No. 116, p. 8.]

### *Discussion*

### I.   *Summary Judgment Standards.*

Federal Rule of Civil Procedure 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)).  If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish there is a genuine issue for trial.  *Id.* at 324.

The non-moving party cannot rely on the pleadings, but must "present significant, probative evidence tending to support h[is] allegations," such as depositions, affidavits, and discovery responses, to show there is a genuine issue for trial.  *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citations omitted).  The Court must then determine, based on the record before it and "with the evidence viewed in the light most favorable to the non-moving party," whether the moving party is entitled to judgment as a matter of law.  *San Diego Police Officers Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 733 (9th Cir. 2009).

/ / /

/ / /

## II.     *Deliberate Indifference to a Serious Medical Need.*

Under the Eighth Amendment, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976).  A cause of action for deliberate indifference to a prisoner's serious illness or injury requires proof of both an objective and a subjective component.  If either the objective or subjective component is not established, the Court has "discretion to give judgment for [the defendants] without taking further evidence" on the remaining component.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

The subjective component requires proof that prison officials had a sufficiently culpable state of mind – "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

With respect to the objective component, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious,' because "society does not expect that prisoners will have unqualified access to health care.'" *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992), citing *Estelle v. Gamble*, 429 U.S., at 103-104.  "The 'routine discomfort' that results from incarceration and which is 'part of the penalty that criminal offenders pay for their offenses against society' does not constitute a 'serious' medical need." *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (citation omitted).

The Ninth Circuit in *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006), summarized the two-part test for deliberate indifference as follows:  "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' [Citations omitted.]  Second, the plaintiff must show the defendant's response to the need

was deliberately indifferent. [Citation omitted.]  This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. [Citation omitted.]  Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'  [Citation omitted.]" Id. at 1096.  "If the harm is an 'isolated exception' to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." Id.

### III.   *The Objective Component/Serious Medical Need.*

In their Motion for Summary Judgment, defendants assume the truth of plaintiff's allegations that they caused him to miss "pill calls" on three non-consecutive days, and they argue that the Court should grant summary judgment in their favor, because plaintiff cannot show he had a "serious medical need" on the dates in question.  [Doc. No. 114, at pp. 8, 11.]  According to defendants, the case law distinguishes between "serious medical needs" and temporary discomfort that does not pose a risk of substantial or lasting harm. In defendants' view, a migraine headache is not a "serious medical need," because it only involves a temporary discomfort that does not pose a risk of substantial or lasting harm. [Doc. No. 114, at p. 11.]

With respect to plaintiff's need for his "mandatory psych medication" on three non-consecutive days to treat some unspecified mental health issue, defendants also argue there was no "serious medical need."  [Doc. No. 114, at p. 12-13.]  In support of this contention, defendants cite plaintiff's deposition testimony indicating he lacks the knowledge or medical training to claim that missing a dose of his "mandatory psych medication" on three non-consecutive days could have resulted in anything more than temporary discomfort.  Defendants also point to plaintiff's deposition testimony indicating that the alleged deprivation of his "mandatory psych medication" on the three non-consecutive days at issue "agitated" him and "aggravated" his existing mental health

issues with no allegations of lasting harm.  [Doc. No. 114, at pp. 12-13, referring to Doc. No. 114-2, at pp. 1-18.]

In the Ninth Circuit, a medical need is considered "serious" when "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).  Important factors include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. . . ."  *McGuckin*, 974 F.2d at 1060-1061.

In *Doty v. County or Lassen*, 37 F.3d at 540, for example, Ninth Circuit considered whether treatment of the plaintiff's mental health fell below constitutional standards.  *Id.* at 546.  The record established that the plaintiff suffered from "nausea, shakes, headache, and depressed appetite due to unresolved family situational stress."  *Id.*  The Ninth Circuit concluded the plaintiff's "mild stress-related ailments are the type of 'routine discomfort' that may result merely from incarceration and the concomitant separation from one's family," and therefore did not constitute a "serious" medical need.  *Id.*  "A 'serious' medical need requires an ailment of a greater magnitude . . . ."  *Id.*  Consequently, the Ninth Circuit concluded "no constitutional violation occurred."  *Id.*

Similarly, in *O'Loughlin v. Doe*, 920 F.2d 614 (9th Cir. 1990), the plaintiff complained that defendants were deliberately indifferent when they "disregarded his repeated requests for aspirin and antacid for his headaches, nausea, and pains."  *Id.* at 616-617.  Although the case was not decided in the context of a summary judgment motion or motion to dismiss on the plaintiff's claim of deliberate indifference to his medical needs, the Ninth Circuit commented that the plaintiff's claim appeared to be "frivolous" on its face and also stated that "[s]uch isolated occurrences of neglect do not amount to a constitutional violation."  *Id.* at 617.

In other circuits, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Griffith v. Franklin Cty., Kentucky*, 975 F.3d 554, 567 (6th Cir. 2020). *See also Abernathy v. Anderson,* 984 F.3d 1, 6 (1st Cir. 2020); *Requena v. Roberts*, 893 F.3d 1195 (10th Cir. 2018); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010); *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Oliver v. Deen*, 77 F.3d 156, 159 (7th Cir. 1996); *Mahan v. Plymouth Cnty House of Corrections*, 64 F3d. 14, 18 (1st Cir. 1995); *Sheldon v. Pezley*, 49 F.3d 1312, 1316 (8th Cir. 1995); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1994); *Monmouth Cnty Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Under this standard, not "every ache and pain or medically recognized condition involving some discomfort" is sufficient to establish an Eighth Amendment claim. *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997). "Deliberately to ignore a request for medical assistance has long been held to be a form of cruel and unusual punishment . . . but this is provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized. . . . A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Id.* quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996).

In *Abernathy v. Anderson*, 984 F.3d 1 (1st Cir. 2020), for example, the plaintiff complained that officers applied restraints so tightly that he had visible cuts, bruises, and swelling in his hands, wrists, and arms but did not receive adequate medical assessment and treatment for his injuries. *Id.* at 4-5. The First Circuit affirmed summary judgment in favor of the defendants, because there was no evidence to show the plaintiff's injuries

9

"were significant enough to give rise to a serious medical need" or that a 48-hour delay in treatment had any detrimental effect on the plaintiff's injuries.  *Id.* at 9-10.

As defendants contend, there are "numerous" unpublished cases in the Ninth Circuit that have concluded no constitutional violation occurred, because the prisoner plaintiff did not have a "serious medical need," and some of these cases "explicitly found that headaches—including migraine headaches—did not rise to the level of serious medical need."  [Doc. No. 114, at pp. 17-19.]  In this regard, defendants cite the following unpublished decisions.  *Robben v. El Dorado Cty.*, No. 216CV2697JAMKJNP, 2017 WL 2473145, at 3 (E.D. Cal. June 8, 2017) (dismissing allegations for failure to "allege facts demonstrating that either [plaintiff's] rash or his headache constitute[d] a 'serious' medical need" that "could [have] result[ed] in further significant injury or the unnecessary and wanton infliction of pain" when there was only a brief delay in providing over-the-counter medication); *Kyger v. Oregon*, No. CIV. 07-481-TC, 2010 WL 5487540, at 5 (D. Or. Dec. 10, 2010), report and recommendation adopted, No. CIV. 07-481-TC, 2010 WL 5487538 (D. Or. Dec. 30, 2010), *aff'd*, 481 F. App'x 307 (9th Cir. 2012) (granting summary judgment in defendants' favor because "suffering for two days with headache like symptoms" and being denied pain medication for two days "does not establish a 'serious medical need' and does not rise to the level of a constitutional violation"); *Vasquez v. Baca*, 323 F. App'x 503, 504 (9th Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's deliberate indifference claim "because his allegations concerning treatment of a cold, a migraine, and athlete's foot did not implicate a serious medical need"); *Keal v. Washington*, No. C05-5737RJB, 2007 WL 527493, at 2 (W.D. Wash. Feb. 14, 2007) (granting summary judgment in favor of defendants because plaintiff did not submit admissible evidence to demonstrate that his "migraine headache constituted a serious medical need that if left untreated, could have resulted in further significant injury or the unnecessary and wanton infliction of pain"); *Barnett v. Goldenson*, No. C 95-3115 CAL, 1995 WL 681270, at 2 (N.D. Cal. Nov. 6, 1995) (dismissing the plaintiff's allegations that he was denied medication for a sinus headache

on four occasions because the allegations did not rise to the level of a cognizable claim for deliberate indifference to serious medical needs).  [Doc. No. 114, at pp. 11-12.]

Defendants have also cited unpublished cases in the Ninth Circuit indicating it is difficult to determine whether a mental health condition rises to the level of a "serious medical condition."  *See, e.g.*, *Mintun v. Corizon Med. Servs.*, No. 1:16-CV-00367-DCN, 2018 WL 1040088, at *5 (D. Idaho Feb. 22, 2018), quoting *Capps v. Atiyeh*, 559 F. Supp. 894, 917 (D. Or. 1982) ("[I]n the context of mental health care, courts have recognized that it is particularly difficult to establish deliberate indifference to a serious need for numerous reasons. 'First, there is considerable room for disagreement and debate among psychiatrists and other mental health professionals as to what is a serious mental illness for which the denial of adequate treatment causes constitutionally cognizable pain.' (Citation omitted)").

Based on the foregoing, it is this Court's view that defendants have successfully shifted the burden to plaintiff by pointing to persuasive case law and portions of the record demonstrating the absence of a genuine issue of fact as to whether plaintiff had a "serious medical need" on the three dates at issue in his Complaint.  Without more, plaintiff's allegations that he demanded access to his "mental health psych medications;" his "P.R.N. medications;" and his "migraine medication" because he had migraine headache do not establish the existence of a "serious medical need" that would trigger Eighth Amendment protections.

In his Opposition, plaintiff argues summary judgment in defendants' favor is not warranted, because it was obvious that he had a "serious medical need" on the dates at issue.  In support of this argument, plaintiff states he was housed in an "E.O.P. psychiatric unit," which is for "seriously mentally and medically challenged inmates;" he "was on medication;" and staff must be specially trained to work in this unit.  [Doc. No. 130, at pp. 2-3.]  According to plaintiff, "just the fact [he] was on medication(s) [implies] seriousness."  [Doc. No. 130, at p. 3.]  Without any evidentiary support, plaintiff also

claims defendants were aware of his "prior activity" when denied medications, such as threats of suicide, self-mutilation, and head banging.  [Doc. No. 130, at p. 3.]

In their Reply, defendants argue, and this Court agrees, that it would not be appropriate to infer a "serious medical need" based solely on plaintiff's representations he was on medication and was housed in EOP, which stands for "Enhanced Outpatient Program."  [Doc. No. 131, at p. 6.]  According to defendants, EOP "has four levels of mental health treatment, which include, from lowest level of mental health treatment to the highest."  [Doc. No. 131, at p. 6 n.1.]  In addition, as defendants point out, the allegations in plaintiff's Opposition indicating he previously had psychiatric symptoms when denied medication are "uncorroborated" and are not included in his Complaint. [Doc. No. 131, at p. 6.]

Plaintiff also argues in his Opposition that he "is not a medical expert but it's obvious that a migraine with pain so severe it causes a nosebleed is a 'serious medical need.'"  [Doc. No. 130, at p. 4.]  However, there are several problems with plaintiff's argument.  First, the allegations in the Complaint do not indicate plaintiff complained to the defendants on the dates in question that he was experiencing severe pain.  Rather, the Complaint indicates plaintiff told defendants he was requesting to be let out of his cell to obtain his migraine medication, his mandatory psych medication, and his P.R.N. medication.  Additionally, as defendants point out, plaintiff testified in his deposition that he felt no need to explain his health issues or medications to the defendants, because it was none of their business.  Plaintiff further indicated in his deposition testimony that he does not believe the type of medication is relevant. "[W]hether it's a blood pressure pill, that has no relevance.  If I say I want my medication, then I want my medication. . . .  Let me explain how this works.  If I say I want my as needed medication, I don't' have to tell the officer what my as needed medication is. . . .  That's none of their business.  It's confidential.  So just me saying I want my as needed medication is all I have to do, period."  [Doc. No. 114, at p 14, referring to Doc. No. 114-2, at pp. 1-18.]  [Doc. No. 116, at pp. 4-9.]

Second, plaintiff's argument ignores the main argument in defendants' Motion, which is that plaintiff cannot show he had a "serious medical need" on the three non-consecutive dates in question, because there is case law indicating that a headache or migraine headache involves only a temporary discomfort and does not qualify as a "serious medical need" that would trigger the Eighth Amendment. [Doc. No. 114, at pp. 8, 11.]

Third, based on the circumstances presented in the Complaint, there is nothing to indicate that an unreasonable risk or a serious medical need would have been obvious to the defendants on the dates in question and under the circumstances presented.  As plaintiff's argument suggests, "a factfinder may conclude that a prisoner official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. at 842.  Examples of serious medical conditions that would be obvious to a layperson, such as the correctional officer defendants in this case, are a recent traumatic injury like a gunshot wound, a beating, or a broken foot. *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990); *Boring v. Kozakiewicz*, 833 F.2d 466, 473 (3d Cir. 1987).  Expert testimony would not be necessary where "the seriousness of injury or illness would be apparent to a lay person." *Id.*  On the other hand, a layman "would not be in a position to decide whether [a knee disorder or migraine headaches] could be classified as 'serious,'" so expert testimony would be needed under these circumstances. *Id.*

Here, defendants presented case law supporting their contention that migraine headaches are not considered serious enough to trigger the Eighth Amendment. However, the Court acknowledges the possibility that expert testimony, such as a declaration from a treating physician, could be enough to raise a triable issue of fact on this issue, but plaintiff did not submit any such evidence.  Likewise, plaintiff has not presented any evidence indicating he has a serious mental health condition such that being denied access to this "mandatory psych medication" on three non-consecutive days would have been harmful.

/ / /

Plaintiff cannot rely on his own "self-diagnosis" alone to establish that he does, in fact, suffer from migraine headaches that he apparently contends are so severe they qualify as a "serious medical condition." *See, e.g., Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994). Plaintiff did attach as Exhibit A to his Opposition a progress note prepared by a psychologist on March 20, 2018, which is one day after the third incident alleged in the Complaint on March 19, 2018. The progress note does include the word "Migraine" in a section entitled "Problem List/Past Medical History/Ongoing," but no further details are included on the note. There is also nothing in the note to indicate plaintiff complained of recent migraine headaches to the psychologist on March 20, 2018. Contrary to the allegations in the Complaint, the note indicates plaintiff's symptoms after reportedly not being allowed to receive his "Psychiatric Medication" on March 19, 2018, were relatively minor. Plaintiff told the psychologist he feels tired, has "[a] lot of anxiety," and feels paranoid because it feels like he is being attacked and antagonized when he cannot access his medication. [Doc. No. 130, at p. 20.] By comparison, the Complaint alleges that on March 19, 2018, when the door was not opened for the "med line," he experienced elevated blood pressure, chest pains, "possible stroke or heart attack," migraines, nosebleed, low back pain, anxiety, depression, manic bi-polar anger, and insomnia. The Complaint also states plaintiff was hearing voices and having thoughts of suicide "due to not receiving his psychiatric medication, pain medication, and migraine medication." [Doc. No. 116, at pp. 8-9.] The progress note also does not list any medications that were prescribed to plaintiff at this time. [Doc. No. 130, at pp. 20-21.] Therefore, it is this Court's view that plaintiff did not meet his burden of producing probative evidence on the seriousness of his medical condition on the dates in question, and, as a result, IT IS RECOMMENDED that the District Court GRANT defendants' Motion for Summary Judgment [Doc. No. 114].

### IV.   *The Subjective Component/Culpable State of Mind.*

As noted above, the subjective component of an Eighth Amendment claim for deliberate indifference to a serious medical need requires proof that prison officials had a

sufficiently culpable state of mind – "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837.

In their Motion for Summary Judgment, defendants argue in the alternative that there is no evidence plaintiff notified them he had a serious medical need on the dates in question in the Complaint.  Defendants' argument is based on the allegations in the Complaint indicating plaintiff told defendants he needed his migraine, psychiatric medication, and P.R.N. medication.  [Doc. No. 114, at p. 13.]  Defendants also point to defendant's deposition testimony.  [Doc. No. 114, at p. 13.]  As noted above, plaintiff testified in his deposition that he felt no need to explain his health issues or medications to the defendants, because it was none of their business.  Plaintiff further indicated in his deposition testimony that he does not believe the type of medication is relevant.  "[W]hether it's a blood pressure pill, that has no relevance.  If I say I want my medication, then I want my medication. . . .  Let me explain how this works.  If I say I want my as needed medication, I don't' have to tell the officer what my as needed medication is. . . .  That's none of their business.  It's confidential.  So just me saying I want my as needed medication is all I have to do, period."  [Doc. No. 114, at p 14, referring to Doc. No. 14-2, at pp. 1-18.]

In his Opposition to defendants' Motion for Summary Judgment, plaintiff states he has presented "clear and convincing evidence" that defendants were "on notice" that he had a "serious medical need" on the dates in question in the Complaint.  However, the only specific evidence plaintiff refers to in support of this argument is the above-referenced March 18, 2020 progress note prepared by a psychologist that plaintiff attached as Exhibit A to his Opposition.  The March 18, 2020 progress note indicates

plaintiff complained to a psychologist that he not been allowed to receive his psychiatric medication "on a number of occasions."  [Doc. No. 130, at p. 20.]

In plaintiff's view, the progress note shows defendants were aware that their actions were in "conscious disregard to a known risk."  [Doc. No. 130, at p. 9.]  However, the progress note does not indicate plaintiff had a "serious medical need."  Nor is there anything to indicate comments plaintiff made in confidence to a psychologist would have been repeated to defendants to place them on "notice" of a "serious medical need" or a risk to plaintiff's health.  Additionally, the progress note is dated March 20, 2018, and the last of the three incidents alleged in the Complaint took place the day before, on March 19, 2018.  Thus, even if it could be inferred from this progress note that defendants were on "notice" of a "serious medical need," that notice would not have been timely in relation to the allegations in the Complaint.  Therefore, the progress note is not enough to raise a triable issue of fact on the subjective component of the deliberate indifference standard.

Next, because of confidentiality laws, plaintiff argues he does not have to show defendants knew exactly "what was wrong with him."  [Doc. No. 130, at p. 9.]  In plaintiff's view, he "need not explain why his medical need is serious or have it be visibly grave and obvious."  [Doc. No. 130, at p. 11.]  "[T]he only thing defendant[s] needed to know is if they don't follow medication dispensing protocols and plaintiff doesn't get his medication[,] they are causing [plaintiff] a serious medical need deprivation."  [Doc. No. 130, at pp. 9, 11.]  However, plaintiff's argument is contrary to controlling case law, which provides that prison officials do not have "a sufficiently culpable state of mind" unless they know of "an excessive risk to inmate health or safety" and disregard that risk – "the official must ***both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference***."  *Farmer v. Brennan*, 511 U.S. at 837 (emphasis added).  In other words, the deliberate indifference standard requires significantly more than simply being aware of medication protocols and plaintiff's demand for migraine medication,

1   "mandatory psych medication, and "P.R.N medication," so plaintiff's argument is

2   unconvincing.

3   With respect to his contention that defendants were deliberately indifferent because

4   they did not follow "medication protocols," plaintiff attached the following document as

5   part of Exhibit A to his Opposition:  Section 3.2.4, Medication Administration, of the

6   Health Care Department Operations Manual for the California Department of Corrections

7   and Rehabilitation [Doc. No. 130, at pp. 17-19.]  Section 3.2.4 indicates that licensed

8   health care staff are responsible for issuing, delivering, and administering medications.

9   [Doc. No. 130, at p. 17.]  Section 3.2.4 also states that medications are either dispensed at

10  a pill window or delivered to individual cells "up to" four times per day.  [Doc. No. 130,

11  at pp. 17-18.]  At the conclusion of a medication line, the medication administration

12  nurse is responsible for identifying patients who did not present "to the pill window" to

13  receive "their routine medications."  [Doc. No. 130, at p. 18.]  Then, "[t]he medication

14  administration nurse shall coordinate with custody to attempt to locate the patient" for

15  medication administration or to document refusal or other barriers that prevented the

16  patient from presenting to the medication line.  [Doc. No. 130, at pp. 18-19.]  "Every

17  attempt shall be made to ensure timely medication administration."  [Doc. No. 130, at

18  p. 19.]  Section 3.2.4 does not indicate the defendants in this case, who are identified as

19  correctional officers and a control booth operator, had any duty to ensure that plaintiff

20  was let out of his cell to receive his medications in a medication line.  Rather, it appears

21  there was a process in place for plaintiff to receive any "mandatory" or other medications

22  from licensed health care staff in the event he was not able to leave his cell to wait in the

23  medication line.  Therefore, Section 3.2.4 does not raise a triable issue of fact as to

24  whether defendants were deliberately indifferent to a "serious medical need."

25  After plaintiff filed his Opposition to defendants' Motion for Summary Judgment,

26  he forwarded a document directly to the undersigned Magistrate Judge entitled "*Ex Parte*

27  Communication on Discovery Issues," which was forwarded to the Clerk's Office for

28  filing.  [Doc. No. 139.]  Plaintiff did not serve this document on defense counsel as he is

17

required to do under Rule 5 of the Federal Rules of Civil Procedure.  Plaintiff submitted this "Ex Parte Communication on Discovery Issues," because he wants the undersigned Magistrate Judge to reconsider a March 19, 2021 ruling on his Motion to Compel.  [Doc. No. 139, at p. 1.]

Although plaintiff's *Ex Parte* Communication on Discovery Issues will be considered in a separate order, it is mentioned here for the sake of judicial efficiency because of the attached documents, which allegedly are "complaints from defendant Navarro's personnel file."[2]  [Doc. No. 139, at p. 1.]  As mentioned above, defendant Navarro is the correctional officer who was allegedly in command of the "control room" on the dates in question in the Complaint, and he allegedly "refused" to let plaintiff out of his cell to obtain his medications.  [*See* Doc. No. 116, at pp. 4, 6-7.]  According to plaintiff, these complaints from defendant Navarro's personnel file are "exactly similar to the complaints" made against him in this case and are "material and ***relevant for trial and for summary judgment***."  [Doc. No. 139, at p. 1 (emphasis added).]

Having reviewed the attachments submitted by plaintiff with his *Ex Parte* Communication on Discovery Issues, the Court located several grievances by inmates against defendant Navarro involving allegations against him that are similar to the allegations against him in this case (*i.e.*, that he would not open cell doors for inmates who wanted to obtain medications; for an inmate being attacked inside his cell; and for inmates who had "ducats for school, lit-lab, law library and other ducat appointments").[3] [Doc. No. 139-1, at pp. 1-50.]

---

[2]   The attachments have been filed under seal, because it is likely they are subject to a Protective Order in another case.  *See, e.g., Williams v. Navarro*, 2021 WL 5180123, at pp. 4-6 (S.D. Cal. 2021) (ordering production of grievances filed by other inmates alleging similar conduct subject to a Protective Order).

[3]   Like plaintiff's Complaint, some of these grievances also allege verbal abuse by defendant Navarro.  [Doc. No. *, at pp. *.]  However, "the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons,"

18cv1581-TWR(KSC)

Assuming without deciding that some or all the above-referenced grievances would be admissible evidence, they are, of course, relevant to plaintiff's claims, but they are not enough to raise a triable issue of fact as to whether defendant Navarro had a culpable state of mind on the dates in question.  These grievances only show that other inmates complained that defendant Navarro, as the control booth operator, would not open cell doors for them on several occasions when they wanted him to do so and that prison officials who reviewed the grievances concluded defendant Navarro "did not violate CDCR policy with respect to one or more of the issues appealed." [Doc. No. 139-1, at pp. 1-50.]

Based on the foregoing, it is this Court's view that, even if plaintiff could establish he had a "serious medical need" on the dates in question, he has not met his burden to submit evidence to raise a triable as to whether any of the defendants had a culpable state of mind when they allegedly failed to take steps to allow plaintiff to exit his cell so that he could obtain his medications in the medication line on the dates in question.  It is therefore RECOMMENDED that the District Court GRANT defendant's Motion for Summary Judgment.  [Doc. No. 114.]

## V.   *Qualified Immunity*.

Defendants argue they are entitled to qualified immunity in this case, because it was not clearly established that plaintiff's "bare" requests for his migraine and other medications on three non-consecutive days would have put a reasonable correctional officer on notice of a "serious medical need." [Doc. No. 114, at p. 19.]  In support of this position, defendants refer the Court to the cases cited above indicating that headaches, including migraine headaches, do not rise to the level of a "serious medical need." [Doc. No. 114, at p. 17.]  In his Opposition, plaintiff argues that defendants are not entitled to qualified immunity, because they knew or should have known they were violating a

_____

which "we do not approve, but which do not violate the Eighth Amendment." *Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012).

constitutional right when they refused to allow plaintiff to leave his cell to obtain his medications for his "serious medical needs."  [Doc. No. 130, at p. 13.]

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The purpose of qualified immunity is to strike a balance between the competing "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

A two-step analysis is applied to determine whether a government official is entitled to qualified immunity.  "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a constitutional violation."  *Pearson,* 555 U.S. at 232.  "Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct.  (Citation omitted.)  Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  *Id.*

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard*, 572 U.S. 765, 778-779 (2014).  "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'"  *Id.*  In addition, the Supreme Court has indicated that the clearly established law should not be defined "at a high level of generality," because this would avoid "the crucial question," which is "whether the official acted reasonably in the particular circumstances that he or she

faced." *Id.*   Here, it would not have been "beyond debate" under the circumstances presented that plaintiff had a "serious medical need" when he demanded to be let out of his cell to obtain his migraine medicine, his mandatory psych medication, and his P.R.N. medication.  Therefore, it is this Court's view that a finding of qualified immunity would be appropriate under the circumstances.

### *Conclusion*

Based on the foregoing, IT IS HEREBY RECOMMENDED that the District Court issue an Order: (1) adopting this Report and Recommendation as to the first, second, and third causes of action in the operative Complaint; and (2) GRANTING defendants' Motion for Summary Judgment [Doc. No. 114].[4]

IT IS ORDERED that no later than ___**March 2, 2022**___, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than ___**March 9, 2022**___. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  February 9, 2022

Hon. Karen S. Crawford
United States Magistrate Judge

---

[4]       As explained above, defendants' Motion for Summary Judgment does not address the fourth case of action against T. Brisco, which was recently added as a new cause of action.  Therefore, if the District Court adopts this Report and Recommendation, there will be one remaining cause of action and one remaining defendant in this case.