UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LANCE WILLIAMS,
CDCR #AG-2394,

Plaintiff,

v.

O. NAVARRO; E. ESTRADA; J. MEJIA;
A. SILVA; et al.,

Defendants.

Case No.: 18cv1581-TWR(KSC)

**REPORT AND RECOMMENDA-
TION RE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

**[Doc. No. 145.]**

Plaintiff is proceeding *pro se* and *in forma pauperis* (IFP) in this civil rights action pursuant to Title 42, United State Code, Section 1983, alleging violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

Before the Court is a Motion for Summary Judgment filed on behalf of defendant T. Brisco as to allegations against her in plaintiff's fourth cause of action in the Second Amended Complaint.  [Doc. No. 116, at pp. 10-12.]   Plaintiff has filed an Opposition to defendants' Motion [Doc. No. 166], and defendants also filed a Reply [Doc. No. 169].

In their Motion, defendants contend that summary judgment should be granted in favor of defendant T. Brisco for several reasons:  (1) there is no evidence that she violated plaintiff's rights under the Eighth and Fourteenth Amendments; (2)  plaintiff failed to exhaust his administrative remedies as to his claims against her; (3) plaintiff

1

cannot establish Article III standing to maintain his allegations against her in Federal Court; and (4) she is entitled to qualified immunity because she did not violate any clearly established constitutional right.  [Doc. No. 145, at pp. 2, 6.]  For the reasons outlined more fully below, the Court RECOMMENDS that the District Court GRANT defendants' Motion for Summary Judgment as to the fourth cause of action in plaintiff's Second Amended Complaint against defendant T. Brisco.

### *Background*

In the first, second, and third causes of action in the Second Amended Complaint, plaintiff alleged that defendants J. Mejia, O. Navarro, E. Estrada, R. Rodriguez, M. Rodriguez, A. Silva, and E. Castro violated his rights under the Eighth Amendment on three non-consecutive days (February 22, 2018, February 25, 2018, and March 19, 2018), because his cell door was not opened to permit him to obtain his migraine and P.R.N. medications during "med lines" or "pill calls."[1]   [Doc. No. 116, at pp 4-9.]  Based on this Court's Report and Recommendation of February 9, 2022 [Doc. No. 140], the District Court granted summary judgment in favor of these defendants in an Order filed on March 29, 2022 [Doc. No. 152].

On June 25, 2021, plaintiff's Motion to Amend was granted, and plaintiff's Second Amended Complaint was filed to add a fourth cause of action, alleging that defendant T. Brisco, was deliberately indifferent to plaintiff's serious medical needs, because she failed to take any steps to ensure than plaintiff received his medications and because she falsified medication administration records by indicating that plaintiff was a "no show with no barriers" during pill calls on February 22, 2018, February 25, 2018, and March 19, 2018.  [Doc. No. 116, at pp. 10-12.]

/ / /

---

[1]     Based on common usage, the Court's understanding is that "P.R.N." refers to medications that are not "mandatory" but are instead taken on an "as needed" basis, such as Tylenol for a headache.

2

1

***Discussion***

2 ***I.    Summary Judgment Standards.***

3          Federal Rule of Civil Procedure 56(a) provides that a court "shall grant summary

4 judgment if the movant shows that there is no genuine dispute as to any material fact and

5 the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party

6 moving for summary judgment always bears the initial responsibility of informing the

7 district court of the basis for its motion, and identifying those portions of "the pleadings,

8 depositions, answers to interrogatories, and admissions on file, together with the

9 affidavits, if any," which it believes demonstrate the absence of a genuine issue of

10 material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P.

11 56(c)). If the moving party meets its initial responsibility, the burden then shifts to the

12 nonmoving party to establish there is a genuine issue for trial. *Id.* at 324.

13          The non-moving party cannot rely on the pleadings, but must "present significant,

14 probative evidence tending to support h[is] allegations," such as depositions, affidavits,

15 and discovery responses, to show there is a genuine issue for trial. *Bias v. Moynihan*, 508

16 F.3d 1212, 1218 (9th Cir. 2007) (citations omitted). The Court must then determine,

17 based on the record before it and "with the evidence viewed in the light most favorable to

18 the non-moving party," whether the moving party is entitled to judgment as a matter of

19 law. *San Diego Police Officers Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725,

20 733 (9th Cir. 2009).

21 ***II.    Section 1983.***

22          Section 1983 provides as follows: "Every person who, under color of any statute,

23 ordinance, regulation, custom, or usage, of any State or Territory or the District of

24 Columbia, subjects, or causes to be subjected, any citizen of the United States or other

25 person within the jurisdiction thereof to the deprivation of any rights, privileges, or

26 immunities secured by the Constitution and laws, shall be liable to the party injured in an

27 action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C.

28 § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides

18cv1581-TWR(KSC)

'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

### III.    *Deliberate Indifference to a Serious Medical Need.*

Under the Eighth Amendment, "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976).  A cause of action for deliberate indifference to a prisoner's serious illness or injury requires proof of both an objective and a subjective component.  If either the objective or subjective component is not established, the Court has "discretion to give judgment for [the defendants] without taking further evidence" on the remaining component.  *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

The subjective component requires proof that prison officials had a sufficiently culpable state of mind – "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

With respect to the objective component, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious,' because "society does not expect that prisoners will have unqualified access to health care.'" *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992), citing *Estelle v. Gamble*, 429 U.S., at 103-104.  "The 'routine discomfort' that results from incarceration and which is 'part of the penalty that criminal offenders pay for their offenses against society' does not constitute a 'serious' medical need." *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (citation omitted).

The Ninth Circuit in *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006), summarized the two-part test for deliberate indifference as follows:  "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could

4

result in further significant injury or the 'unnecessary and wanton infliction of pain.' [Citations omitted.]  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. [Citation omitted.]  This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. [Citation omitted.]  Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'  [Citation omitted.]" *Id.* at 1096.  "If the harm is an 'isolated exception' to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." *Id.*

Here, the deliberate indifference allegations in the fourth cause of action are divisible into two parts.  First, plaintiff alleges that defendant T. Brisco, a "psych tech" who was in charge of dispensing medications, was deliberately indifferent to his serious medical needs because she knew plaintiff was asking to be let out of his cell to obtain his medications during pill call, but she did not take any steps to ensure that he was able to receive his medications, such as requesting that he be let out of his cell or taking the medications to him.[2]  Instead, plaintiff contends she simply falsified the records to indicate he had no barriers and did not show up.  [Doc. No. 166, at pp. 17-18; Doc. No. 116, at pp. 10-12.]  Because of defendant T. Brisco's inactions, plaintiff alleges he suffered pain from a migraine and other ailments.  [Doc. No. 116, at pp. 10-12.]  These are essentially the same allegations plaintiff made against other defendants that were dismissed from the first, second, and third causes of action, because plaintiff is unable to

---

[2]     In support of his Opposition, plaintiff submitted a Declaration by another prisoner on the issue of defendant T. Brisco's knowledge.  The Declaration states that the prisoner approached the "med nurse" on March 19, 2018 and on two other dates, and he told her plaintiff really needed his medications but was not being let out of his cell for pill call. [Doc. No. 166-1, at p. 2.]

establish that he had a serious medical need on the dates in question.  [Doc. No. 140, at pp. 6-14; Doc. No. 152.]

Second, plaintiff claims he learned during the discovery process that defendant T. Brisco not only failed to take action to ensure he received his medications, she also inaccurately indicated in medication administration records that plaintiff was "a no show with no barriers" during pill calls on the three non-consecutive dates at issue in the Second Amended Complaint (February 22, 2018, February 25, 2018, and March 19, 2018).  [Doc. No. 116, at pp. 10-12.]  Once again, the harms alleged based on defendant T. Brisco's actions in this regard are that plaintiff did not obtain his medications and suffered pain from a migraine and other ailments.  [Doc. No. 116, at p. 12.]

The Motion for Summary Judgment states that defendant T. Brisco denies she placed any false information in medication administration records.  Even assuming the truth of these allegations, defendants contend the Court should grant summary judgment in favor of defendant T. Brisco on this cause of action, because plaintiff has not stated a cognizable claim for deliberate indifference to his serious medical needs.  [Doc. No. 145, at p. 11.]  In defendants' view, plaintiff has not stated a cognizable claim for deliberate indifference against defendant T. Brisco, because any notations that plaintiff was a "no show/no barriers" for pill calls would have been made "*after-the-fact*," so they would not have had any bearing on plaintiff's ability to obtain his medications during pill calls. [Doc. No. 145, at p. 12 (emphasis in original).]  In other words, defendants contend there is no causal connection between defendant T. Brisco's allegedly false notations and plaintiff's failure to obtain his medications on February 22, 2018, February 25, 2018, and March 19, 2018.

In support of their contentions, defendants cite *Williams v. Ortega*, No. 18cv547-LAB(MDD), 2019 WL 5704684 (S.D. Cal. Nov. 4, 2019).  The plaintiff in *Williams* alleged deliberate indifference because his medical records were falsified "to make his injury seem less serious."  *Id.* at 2.  In this regard, the District Court granted the defendants' motion to dismiss, concluding the plaintiff failed to state a claim, because

"the falsification of medical records, by itself, does not give rise to a deliberate indifference claim." *Id.* at 2-3.

Defendants' argument is persuasive. Other courts have reached the same conclusion as the District Court in *Williams v. Ortega, supra*, explaining that allegations of falsifying medical records may be relevant to a claim of deliberate indifference to serious medical needs, but there is no cognizable claim under the Eighth Amendment solely for falsifying medical records. *See, e.g., Gibbs v. Godina,* No. CV 18-697-RGK (PLA), 2019 WL 8064029, at 5 (C.D. Cal. Feb. 13, 2019*); Phillips v. Borders*, No. EDCV 16-01568-MWF(JDE), 2017 WL 10543562, at 5 (C.D. Cal. May 5, 2017); *Crisp v. Wasco State Prison*, No. 13-01899, 2015 WL 3486950, at 5 (E.D. Cal. June 2, 2015); *Bartholomew v. Traquina*, No. CIV S-10-3145 EFB P, 2011 WL 4085479, at 3 (E.D. Cal. Sept. 13, 2011).

Here, as outlined above, plaintiff has failed to state viable claim under the Eighth Amendment as to the first part of her fourth cause of action alleging defendant T. Brisco was deliberately indifferent to serious medical needs, because she failed to take steps to ensure plaintiff obtained his medications. For the reasons outlined in this Court's prior Report and Recommendation, which was adopted by the District Court, defendant T. Brisco is entitled to summary judgment on this part of plaintiff's Eighth Amendment deliberate indifference claim, because plaintiff is unable to establish that he had a serious medical need on the dates in question. [Doc. No. 140, at pp. 6-14; Doc. No. 152.]

Second, based on the case law cited by defendants, the falsification allegations in the fourth cause of action could be relevant to defendant T. Brisco's state of mind on the dates in question and could be helpful to show she was deliberately indifferent. However, the falsification allegations are not relevant to whether plaintiff had a serious medical need. Thus, even if plaintiff could show defendant T. Brisco was callous and indifferent, he does not have a viable Eighth Amendment claim against her, because, as outlined in this Court's prior Report and Recommendation, which was adopted by the District Court, plaintiff did not meet his burden of producing probative evidence on the

seriousness of his medical condition on the dates in question.  [Doc. No. 140, at pp. 11-14; Doc. No. 152.]  Without a serious medical need, plaintiff's fourth cause of action is essentially a standalone claim for falsification of medication administration records, which is not a cognizable Eighth Amendment claim under Section 1983.  Accordingly, IT IS RECOMMENDED that the District Court GRANT defendants' Motion for Summary Judgment as to plaintiff's Eighth Amendment deliberate indifference claim in the fourth cause of action.

## IV.  *Due Process.*

The fourth cause of action in the Second Amended Complaint also cites the Due Process Clause.  [Doc. No. 116, at p. 10.]  Defendants argue that plaintiff has not stated a viable claim.  According to defendants, the Due Process Clause only protects inmates when they have faced a deprivation that imposes an "atypical and significant hardship," and plaintiff has not identified how the alleged falsification of medication administration records by defendant T. Brisco subjected him to an "atypical and significant hardship." [Doc. No. 145, at p. 10.]

In his Opposition, plaintiff contends he did suffer an "atypical and significant hardship," because defendant T. Brisco did not follow protocols, which required her to take some action, such as requesting that he be let out of his cell or taking the medications to him.  [Doc. No. 166, at pp. 16-17.]  According to plaintiff, the situation caused by defendant T. Brisco's inactions is not "an ordinary incident of prison life" and does not "mirror regular conditions imposed on inmates," and it caused plaintiff "to suffer an atypical and significant hardship of cruel and unusual punishment, pain and suffering and wanton infliction of pain for days. . . ."  [Doc. No. 166, at pp. 17-18.] However, for the reasons outlined below, the allegations in the Second Amended Complaint and the arguments in plaintiff's Opposition are not enough to establish plaintiff had a liberty interest that would have triggered Due Process protections or that he suffered an "atypical and significant hardship" because of defendant T. Brisco's actions or inactions on the dates in question.

18cv1581-TWR(KSC)

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."  *Id.* at 556.  To state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995).  "But these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.

The prisoner in *Sandin v. Conner*, 515 U.S. at 472, for example, was falsely charged with "high misconduct" when he allegedly interfered with a prison officer who was escorting him from his cell to a program.  The prisoner was found guilty of the alleged misconduct by an adjustment committee without the opportunity to present witnesses, but the charges were later expunged as unsupported in an administrative review proceeding.  *Id.* at 475-476.  The prisoner then filed suit seeking damages and other relief, claiming a violation of his right to Due Process because he was falsely charged and disciplined in segregated confinement for 30 days.  *Id.* at 476.  The Supreme Court held that the prisoner's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.  The record shows that, at the time of [the prisoner's] punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody."  *Id.* at 486.  In other words, "the State's actions in placing [the prisoner] there for 30 days did not work a major disruption in his environment.  [¶]Nor [did the prisoner's] situation affect the duration of his sentence."  *Id.*  Thus, the Due Process Clause and the prison regulation in question did not afford the prisoner "a protected liberty interest" that would have required the disciplinary proceeding to include all the procedural protections set forth in

18cv1581-TWR(KSC)

1  *Wolff v. McDonnell*, 481 U.S. 539 (1974), including the right to call witnesses.[3]  *Id.* at

2  487.

3         As noted above, there is no right to Due Process unless a prisoner can first identify

4  "a liberty interest triggering procedural protections."  *Chappell v. Mandeville*, 706 F.3d

5  1052, 1062.  "'[L]awfully incarcerated persons retain only a narrow range of protected

6  liberty interests.'"  *Id.* at 1062-1063, *quoting Hewitt v. Helms*, 459 U.S. 460, 467 (1983).

7  In this regard, "the Due Process Clause does not protect against all changes in conditions

8  of confinement even where they 'hav[e] a substantial adverse impact on the prisoner

9  involved."  *Chappell*, 706 F.3d at 1063.  "Only the most extreme changes in the

10  conditions of confinement have been found to directly invoke the protections of the Due

11  Process Clause, such as involuntary commitment to a mental institution, [citation

12  omitted], or the forced administration of psychotropic drugs.  [Citation omitted]."  *Id.*

13         With respect to Due Process claims by inmates, *Sandin*, 515 U.S. at 472,

14  "refocused the inquiry on whether the action 'imposes [an] atypical and significant

15  hardship on the inmate in relation to the ordinary incidents of prison life.'"[4]  *Chappell*,

16  706 F.3d at 1064.  Determining whether conditions constitute an "atypical and significant

17  hardship" is "context dependent" and requires "fact by fact consideration."  *Id.*  In this

18  regard, there are three issues cited by the Supreme Court in *Sandin*, 515 U.S. at 486, that

19

20

21  [3]       Although the prisoner in *Sandin* was not able to establish a violation of the Due

22  Process Clause, the Supreme Court noted other protections from arbitrary state action
    were available to him "even within the expected conditions of confinement."  *Sandin*,

23  515 U.S. 487 n.11.  These protections included the Eighth Amendment and internal
    prison grievance procedures.  *Id.*

24  [4]       According to the Ninth Circuit in *Keenan v. Hall*, 83 F.3d 1083, 1088–1089 (9th

25  Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998), "[t]he
    [Supreme] Court in its new approach [in *Sandin*, 515 U.S. at 472] seeks to prevent

26  turning every rule or regulation that establishes a procedure or requires the provision of
    an amenity into a right that implicates a liberty interest. It cited examples, *inter alia*: tray

27  lunches rather than sack lunches, any book that is not a security threat, and cells with TV
    and electric outlets."  *Id.* at 1088-1089.

28

18cv1581-TWR(KSC)

should be considered:  "(1) whether the conditions of confinement 'mirrored those conditions imposed upon inmates in analogous discretionary confinement settings, namely administrative segregation and protective custody,' (2) the duration and intensity of the conditions of confinement; and (3) whether the change in confinement would 'inevitably affect the duration of [the prisoner's] sentence.'  [Citation omitted.]"  *Chappell*, 708 F.3d at 1064-1065.

In *Brown v. Oregon Department of Corrections,* 751 F.3d 983 (9th Cir. 2014), for example, the Ninth Circuit concluded that a prisoner's "fixed and irreducible" term in ***solitary confinement for twenty-seven months*** "imposed an atypical and significant hardship under any plausible baseline" and therefore implicated a protected liberty interest.  *Id.* at 988 (emphasis added).  The confinement was for "over twenty-three hours each day with almost no interpersonal contact," and the prisoner was also denied "most privileges afforded inmates in the general population."  *Id.*

In this case, the only identified change to the conditions of plaintiff's confinement is three brief occasions on three non-consecutive days when his cell door was not opened to allow him to obtain his medications during pill calls.  Therefore, in this Court's view, plaintiff has not identified a liberty interest that would trigger Due Process protections.  Plaintiff's allegations do not even suggest there was an extreme change in the conditions of his confinement that would rise to the level of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.

In his Opposition, plaintiff argues that his inability to leave his cell on the dates in question did constitute an "atypical and significant hardship," because this situation "did not mirror regular conditions imposed on inmates who regularly receive medications."  [Doc. No. 166, at p. 18.]  However, plaintiff's argument is unconvincing based simply on the nature of the institution.  Inmates cannot expect to be able to leave their cells at will and would, no doubt, encounter barriers to leaving their cells for any number of reasons, including safety and security, on a regular or frequent basis.

/ / /

1    In his Opposition, plaintiff further argues that being confined to his cell on the

2  three non-consecutive dates did impact the duration of his sentence, because he

3  repeatedly clashed with officers when he did not take his medications and received

4  "numerous rules violations" that added to his sentence.  [Doc. No. 166, at pp. 18-19.]

5  However, these allegations were made for the first time in plaintiff's Opposition and are

6  not included in the Second Amended Complaint.  Nor did plaintiff submit any evidence

7  to support these allegations, and, without more, they are too weak and attenuated to raise

8  a triable issue of fact.

9    Based on the foregoing, IT IS RECOMMENDED that the District Court GRANT

10  defendants' Motion for Summary Judgment as to plaintiff's Due Process allegations in

11  the fourth cause of action in the Second Amended Complaint.  As defendants contend,

12  the Due Process allegations in the fourth cause of action do not identify a liberty interest

13  that would trigger Due Process protections or a change in plaintiff's conditions of

14  confinement that rise to the level of an "atypical and significant hardship on the inmate in

15  relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.

16  ***V.    Exhaustion of Administrative Remedies.***

17    "Failure to exhaust under the [Prison Litigation Reform Act or] PLRA is 'an

18  affirmative defense the defendant must plead and prove.'"  *Albino v. Baca*, 747 F.3d

19  1162, 1166 (9th Cir. 2014), quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).

20  "[D]efendant's burden is to prove that there was an available administrative remedy, and

21  that the prisoner did not exhaust that available remedy."  *Id.* at 1172.  "Once the

22  defendant has carried that burden, the prisoner has the burden of production. That is, the

23  burden shifts to the prisoner to come forward with evidence showing that there is

24  something in his particular case that made the existing and generally available

25  administrative remedies effectively unavailable to him."  *Id.*

26    The PLRA exhaustion requirement is mandatory.  *McKinney v. Carey*, 311 F.3d

27  1198, 1199 (9th Cir. 2002), citing *Booth v. Churner*, 532 U.S. 731, 741 (2001).  With

28  respect to new claims asserted in an amended complaint, the PLRA's exhaustion

18cv1581-TWR(KSC)

1  requirement is satisfied if the plaintiff exhausts his administrative remedies as to the new

2  claims before he tenders his amended complaint to the court for filing. *Rhodes v.*

3  *Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010). A prisoner cannot comply with the

4  requirement "by exhausting available remedies during the course of the litigation."

5  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). Dismissal with prejudice is

6  required when exhaustion is untimely. *Id.* at 1200-1201.

7       As set out more fully in defendants' Motion for Summary Judgment, regulations in

8  effect until 2020 required plaintiff to exhaust administrative remedies by proceeding

9  through a three-level administrative review and obtaining a decision at each level. *Reyes*

10  *v. Smith,* 810 F.3d 654, 657 (9th Cir. 2016). "Under the PLRA, a grievance 'suffices if it

11  alerts the prison to the nature of the wrong for which redress is sought.'" *Id.* at 659.

12  "The primary purpose of a grievance is to alert the prison to a problem and facilitate its

13  resolution, not to lay groundwork for litigation." *Id.* "The grievance process is only

14  required to 'alert prison officials to a problem, not to provide personal notice to a

15  particular official that he may be sued.'" *Id.* at 659, quoting *Jones*, 549 U.S. at 219. In

16  this regard, an inmate grievance in California must first be presented on CDCR Form 602

17  and must "describe the specific issue under appeal and the relief requested." Cal. Code

18  Reg., tit. 15, § 3084.2(a).

19       Citing a Form 602 that plaintiff attached to the Second Amended Complaint,

20  defendants contend that plaintiff had access to the prison grievance system and did

21  submit a grievance concerning his allegations in the first, second, and third causes of

22  action in the Second Amended Complaint. [Doc. No. 145, at p. 14, citing Doc. No. 116,

23  at pp. 16-18.] However, defendants contend that plaintiff did not pursue a claim in the

24  prison grievance system concerning his allegation that defendant T. Brisco falsified

25  medication administration records. These allegations clearly indicate a new and different

26  problem that prison officials should have had an opportunity to address before plaintiff

27  added these allegations to the Second Amended Complaint. Defendants therefore argue

28  that the District Court should grant summary judgment in defendant T. Brisco's favor,

because administrative remedies were available to plaintiff, but he failed to exhaust them before his Second Amended Complaint was filed.  [Doc. No. 145, at p. 14.]

On May 19, 2021, plaintiff filed another Motion to File a Second Amended Complaint to add the new claim against defendant T. Brisco.  [Doc. No. 108.]  This Motion was granted, and the Second Amended Complaint was filed no June 25, 2021.  [Doc. Nos. 115, 116.]  Therefore, at the very latest, plaintiff was required to exhaust his administrative remedies as to the new falsification claim against defendant T. Brisco no later than June 25, 2021, when the Second Amended Complaint was filed.  [Doc. No. 116.]

In support of their contentions, defendants submitted Exhibit C to their Motion for Summary Judgment that addresses the issue of exhaustion.  Exhibit C is plaintiff's responses to defendants' Request for Admissions dated September 13, 2021.  In response to defendants' Request for Admission No. 5, plaintiff said that he discovered the new falsification claim against defendant Brisco in December of 2020 and then submitted a grievance by handing it to an officer, because he was on "Covid-19 protocol quarantine for transfer."  [Doc. No. 145-1, at p. 28.]  However, plaintiff represents that he never received a log number notice form or any type of response.  After 60 days, plaintiff considered his administrative remedies exhausted before he filed his Second Amended Complaint.  [Doc. No. 145-1, at p. 28.]  Plaintiff did not present, and this Court was unable to locate, any binding or persuasive precedent that would permit a prisoner to simply consider his administrative remedies exhausted when he has not received a response or log number after 60 days and/or without any follow up to determine the status of his grievance.

In his Opposition to defendants' Motion, plaintiff states that he filed an "appeal" as to his claim against defendant T. Brisco in December 2020, while the facility was shut down, and he was then transferred to another facility shortly thereafter.  Without support, plaintiff also claims his appeal was "lost or tampered with" and no facility will make copies of appeals at the first level, so he has no copy to provide the Court.  Therefore,

14

1  plaintiff argues that administrative remedies were unavailable to him.  [Doc. No. 166, at
2  p. 2.]  However, plaintiff's statements are unconvincing because they are unsupported by
3  evidence.

4          Alternatively, plaintiff argues that the Court is "obligated" to stay the case under
5  the circumstances (*i.e.*, that the falsification claim against defendant T. Brisco was only
6  revealed during discovery in this case), so that he can track down the initial appeal he
7  submitted in December 2020 and continue to exhaust his administrative remedies as to
8  the falsification claim.  However, plaintiff's contention that a stay must be granted is
9  unsupported.  In addition, as noted above, binding precedents establish that exhaustion is
10  mandatory before an amended complaint is filed and that dismissal with prejudice is
11  required when exhaustion is untimely, so a stay would not be appropriate under the
12  circumstances.

13          Plaintiff also argues that the Court could excuse his failure to exhaust
14  administrative remedies based on futility because "no pertinent relief" could be obtained
15  at this time.  [Doc. No. 166, at p. 3.]  Once again, plaintiff did not present, and the Court
16  was unable to locate, any binding or persuasive authority indicating the Court could
17  excuse plaintiff's failure to exhaust under the facts and circumstances presented.

18          With their Reply, defendants submitted evidence that satisfies their ultimate burden
19  on the exhaustion issues.  First, defendant filed a Declaration by an administrator who
20  provides oversight of health care appeals/grievances for adult inmates for the California
21  Department of Corrections and Rehabilitation (CDCR).  [Doc. No. 169-1, at p. 1.]  The
22  administrator conducted a database search for any appeals/grievances submitted by
23  plaintiff and was able to locate a grievance he submitted in December of 2020.  However,
24  the subject of this grievance does not relate to the allegations at issue in this action and
25  does not mention anything about defendant T. Brisco, who worked as a psychiatric
26  technician at Richard J. Donovan Correctional Facility.  [Doc. No. 159-1, at pp. 3-4.]
27          Second, defendants submitted with their Reply a Declaration by an administrator
28  for the CDCR in the Office of the Appeals (OOA).  [Doc. No. 169-2, at pp. 1-2.]  The

18cv1581-TWR(KSC)

administrator conducted a records search and was unable to locate any appeals in the system alleging that defendant T. Brisco ignored plaintiff's requests for medication and falsified medical records.  [Doc. No. 169-2, at pp. 3-5.]

Based on the foregoing, the evidence before the Court shows that administrative remedies were available to plaintiff, but he failed to satisfy them as to his falsification allegations against defendant T. Brisco before the Second Amended Complaint was filed on June 25, 2021.  Accordingly, IT IS RECOMMENDED that the District Court grant defendants' Motion for Summary Judgment for failure to exhaust administrative remedies as to the claim in the fourth cause of action in the Second Amended Complaint alleging that defendant T. Brisco falsified medication administration records.

## VI.  *Qualified Immunity.*

Defendants argue that defendant T. Brisco is entitled to qualified immunity, because she did not violate any clearly established constitutional right.  While defendant T. Brisco maintains that she did not falsify any medication administration records [Doc. No. 145, at p. 145], she argues that a finding of qualified immunity is appropriate, because the mere presence of inaccurate information in prison records does not, without more, violate a clearly established constitutional right.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The purpose of qualified immunity is to strike a balance between the competing "need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

1
2
3
4
5
6
7

A two-step analysis is applied to determine whether a government official is entitled to qualified immunity.  "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a constitutional violation."  *Pearson,* 555 U.S. at 232.  "Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct.  (Citation omitted.)  Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  *Id.*

8
9
10
11
12
13
14
15
16

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard*, 572 U.S. 765, 778-779 (2014).  "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'"  *Id.*  In addition, the Supreme Court has indicated that the clearly established law should not be defined "at a high level of generality," because this would avoid "the crucial question," which is "whether the official acted reasonably in the particular circumstances that he or she faced."  *Id.*

17
18
19
20
21
22
23
24
25

For the reasons outlined in previous sections of this Report and Recommendation, the facts alleged in plaintiff's fourth cause of action do not "make out a constitutional violation" that was clearly established at the time of defendant T. Brisco's alleged actions or inactions.  *Pearson,* 555 U.S. at 232.  Since a defendant cannot be said to have violated a clearly established right unless the right was clearly established at the time of an official's alleged misconduct, a finding of qualified immunity would be appropriate under the circumstances.  Accordingly, IT IS RECOMMENDED that the District Court grant defendants' Motion for Summary Judgment on the issue of qualified immunity as to defendant T. Brisco.

26

## VII.  *Standing*.

27
28

Defendants contend that plaintiff does not have standing to maintain an action in Federal Court against defendant T. Brisco under Section 1983, because he has only

1   alleged that she falsely recorded entries in the medication administration records and has

2   not alleged a concrete injury caused by the false information.  [Doc. No. 145, at pp. 9-

3   10.]

4          "Standing to sue is a doctrine rooted in the traditional understanding of a case or

5   controversy.  The doctrine developed in our case law to ensure that federal courts do not

6   exceed their authority as it has been traditionally understood."  *Spokeo, Inc. v. Robins*,

7   578 U.S. 330, 338 (2016).  "The doctrine limits the category of litigants empowered to

8   maintain a lawsuit in federal court to seek redress for a legal wrong."  *Id.*  To establish

9   standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to

10  the challenged conduct of the defendant, and (3) that is likely to be redressed by a

11  favorable judicial decision."  *Id.*  "The plaintiff, as the party invoking federal jurisdiction,

12  bears the burden of establishing these elements."  *Id.*

13         "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is ***both***

14  'concrete and particularized.'"  *Id.* at 334 (emphases added).  To be particularized, an

15  injury "must affect the plaintiff in a personal and individual way" (*e.g.,* a personal injury

16  or some actual or threatened injury).  *Id.* at 339.  For example, the plaintiff in *Spokeo*

17  filed suit after discovering that an online search engine governed by the Fair Credit

18  Reporting Act (FCRA) contained inaccurate information about him, and he claimed that

19  the defendant "willfully failed to comply with the FCRA [statutory] requirements."  *Id.* at

20  333, 336.  The Supreme Court concluded the plaintiff satisfied the particularized injury

21  component, because he claimed a personal interest in the handling of his own credit

22  information and alleged that his own statutory rights had been violated by the defendant.

23  *Id.* at 339-340.

24         As noted above, "[a]n injury in fact must also be 'concrete.'"  *Id.* at 339.  A

25  "concrete" injury is one that is "real" and "not abstract."  *Id.* at 340.  A "concrete" injury

26  may be tangible or intangible.  *Id.* at 340.  Standing "requires a concrete injury even in

27  the context of a statutory violation.  For that reason, [the plaintiff in *Spokeo*] could not,

28  / / /

18cv1581-TWR(KSC)

1   for example, allege a bare procedural violation, divorced from any concrete harm, and

2   satisfy the injury-in-fact requirement." *Id.* at 341.

3       The Supreme Court in *Spokeo* further explained that "[a] violation of one of the

4   FCRA's procedural requirements may result in no harm.  For example, even if a

5   consumer reporting agency fails to provide the required notice to a user of the agency's

6   consumer information, that information regardless may be entirely accurate.  In addition,

7   not all inaccuracies cause harm or present any material risk of harm.  An example that

8   comes readily to mind is an incorrect zip code.  It is difficult to imagine how the

9   dissemination of an incorrect zip code, without more, could work any concrete harm."

10  *Id.* at 342.

11      As defendants contend, plaintiff's fourth cause of action only alleges that

12  defendant T. Brisco made false entries in the medication administration records stating

13  that plaintiff was a "no show" with "no barriers" at pill calls on the dates in question

14  without any alleged harm that could have been caused by the allegedly false entries.  To

15  the extent harm is alleged in this cause of action, it relates to allegations that defendant

16  T. Brisco did not take steps to ensure that plaintiff received his medications, with the

17  alleged harm being that plaintiff suffered symptoms because he was not able to take his

18  medications.  [Doc. No. 116, at pp. 10-12.]

19      Although plaintiff's allegations concerning the false entries are "particularized" to

20  him as they relate to the accuracy of prison records that pertain to him, there are no

21  allegations indicating the false entries caused him any harm or presented any material

22  risk of harm to him.  As defendants contend, the alleged false entries would have been

23  made "after the fact," so it is difficult, without more, to imagine they could have been the

24  cause of any harm, and plaintiff has not submitted any evidence of harm or a material risk

25  of harm.

26      In sum, there is nothing in the fourth cause of action or in the record before the

27  Court indicating that the allegedly false entries in the medication administration records

28  was the cause of any concrete harm or risk of harm to plaintiff.  As a result, plaintiff has

not met his burden of establishing he has standing to maintain an action against defendant T. Brisco based on the alleged false entries in the medication administration records.  It is therefore RECOMMENDED that the District Court GRANT defendants' Motion for Summary Judgment on the issue of standing, because plaintiff's bare allegations of false entries in the medication administration records do not satisfy his burden of establishing a concrete injury or risk of harm, as required by the Supreme Court's decision in *Spokeo v. Robins*, 578 U.S. at 330.

### *Conclusion*

Based on the foregoing, IT IS HEREBY RECOMMENDED that the District Court issue an Order: (1) adopting this Report and Recommendation as to the fourth cause of action in the Second Amended Complaint; and (2) GRANTING defendants' Motion for Summary Judgment in its entirety.  [Doc. No. 145].

This Report and Recommendation is submitted by the undersigned Magistrate Judge as permitted by 28 United States Code § 636(a)(b)(1).  "Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."  28 United States Code § 636(a)(b)(1) (2022).  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  September 15, 2022

Hon. Karen S. Crawford
United States Magistrate Judge